**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL** |
| | : | |
| **v.** | : | **NO.  07-388-1 & 2** |
| | : | |
| **KENNETH THOMPSON and** | : | |
| **ROMEL BOLGER** | : | |

<u>**MEMORANDUM OPINION**</u>

**Savage, J.**                                                                                    **May 2, 2012**

      Kenneth Thompson and Romel Bolger, who were convicted of various drug offenses,[1] have filed motions under 28 U.S.C. § 2255.  Both contend that their attorneys were ineffective at the suppression hearing because they had failed to conduct an investigation.  They argue that a proper investigation would have uncovered evidence that could have been used to contradict the asserted basis for the search of the residence in which incriminating drug evidence was found.  Bolger also claims that his attorney was ineffective at his sentencing.  He contends that his attorney failed to use certain information to impeach the agent whose testimony was proffered to support a two-level enhancement for possession of a firearm in connection with a drug trafficking offense.

      After reviewing the record of the suppression hearing, the trial and the sentencing hearing, we conclude that the attorneys' performance was not deficient; and, even if it was, the defendants suffered no prejudice.  Therefore, the motions will be denied.

---

    [1]  Thompson and Bolger were both convicted of possession with intent to distribute cocaine and possession with intent to distribute crack cocaine.  Thompson was also convicted of conspiracy to possess with intent to distribute cocaine and cocaine base, and conspiring to maintain a house for the purpose of drug trafficking.

**Background**

Responding to a report of gun shots, police found Bolger, who was bleeding and suffering from a gunshot wound, in the middle of Levick Street in Philadelphia.  Almost contemporaneously, other officers arrived at the driveway in the rear of 1053 Levick Street where they found evidence of a gun fight.  They observed a discarded hand gun, spent shell casings and two cars with bullet holes in the doors.  The front door of one of the cars was open.

Witnesses at the scene described a shoot-out between two groups of men. According to police, one of the witnesses told them that a male pulled a small child from one of the shot-up vehicles and went into 1053 Levick Street.  When the officers received no response to knocking and heard water running in the house, they concluded that someone who may have been injured in the shoot-out might be inside.

When a supervisor arrived at the scene, he decided to enter the building to determine whether an injured person was inside.  He determined that it would take too much time to secure a warrant.   Therefore, he ordered officers to forcibly enter the property.

Immediately inside the door, the officers found a hand gun.  In the basement level, they discovered two more guns, a quantity of cocaine, bags of crack cocaine, a scale, a substantial sum of currency, and drug packaging materials.

The defendants moved to suppress the evidence found in the house, arguing that it was the product of an illegal warrantless search.  They specifically argued that it was unreasonable for the police to believe that an injured person might have been inside the property.  Finding that the witnesses who testified at the suppression hearing were credible

2

and the conflicting testimony explicable, we determined that exigent circumstances existed to justify a warrantless entry into the property.  Therefore, the motions to dismiss were denied.

At the trial, the evidence against the defendants consisted primarily of the items, including guns, drugs, and drug paraphernalia, found by the police after they forcibly entered 1053 Levick Street.  Based upon this evidence, the jury convicted the defendants.

The defendants appealed the denial of their suppression motions and the sufficiency of the evidence.  The Third Circuit Court of Appeals affirmed.  *United States v. Thompson*, 357 Fed. App'x 406 (3d Cir. 2009).  The defendants then filed timely § 2255 motions, raising ineffectiveness of counsel.

### Legal Standard

Ineffective assistance of counsel claims are evaluated under the familiar two part standard established in *Strickland v. Washington*, 466 U.S. 668 (1984).  *See Williams v. Taylor*, 529 U.S. 362, 390-91 (2000).  First, the petitioner must demonstrate that his attorney's performance was deficient, that is, "counsel's representation fell below an objective standard of reasonableness," considering all of the surrounding circumstances of the particular case and the facts viewed at the time of counsel's conduct.  *Strickland*, 466 U.S. at 687-89.  Second, if there was deficient performance, he must show that it prejudiced his defense.  *Id*. at 691-92.  The prejudice prong requires a showing that as a result of the deficient representation, a reasonable probability exists that the results of the proceedings would have been different.  *Id*. at 694.  A reasonable probability is one that is "sufficient to undermine confidence in the outcome."  *Id*.  In other words, the prejudice

3

component focuses on whether counsel's deficient performance renders the result of the proceedings unreliable or the proceeding fundamentally unfair. *Williams*, 529 U.S. at 393 n.17.

Counsel's performance is deficient only where the defendant can show that counsel's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688.  Where counsel's conduct falls within the wide range of reasonable professional assistance under the circumstances, it is presumed to be sound strategy. *Id*. at 689.

The performance analysis starts with the presumption that counsel's conduct was part of a sound strategy.  This "weak" presumption can be rebutted by showing either that the conduct was not part of a strategy or was part of an unsound strategy. *Thomas v. Varner*, 428 F.3d 491, 499-500 (3d Cir. 2005).  Where the record does not explicitly reveal trial counsel's actual strategy or the lack of one, the presumption may be rebutted only by a showing that no sound strategy could have supported the conduct. *Id*. at 500.  Where counsel's conduct was part of a strategy devised after an investigation of the law and the facts, "the 'weak' presumption becomes a 'strong' presumption, which is 'virtually unchallengeable.'" *Id*. (quoting *Strickland*, 466 U.S. at 690).

"[O]vercoming the strategic presumption does not, in itself, entitle [the defendant] to relief.  It merely gives him the opportunity to show that counsel's conduct fell below objective standards of attorney conduct." *Id*. at 501.  In other words, the petitioner still must establish that counsel's performance was objectively unreasonable.

To satisfy the prejudice component, the defendant must establish "that there is a

4

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 502 (quoting *Strickland*, 466 U.S. at 694). The prejudice standard is not "a stringent one." *Id*. (quoting *Jacobs v. Horn*, 395 F.3d 92, 105 (3d Cir. 2005)). The defendant "need not show that counsel's deficient performance more likely than not altered the outcome in the case - rather, he must show only a probability sufficient to undermine the confidence in the outcome." *Id*. at 502 (citations and internal quotation marks omitted).

### Discussion

Characterizing their ineffectiveness of counsel claim as a failure to investigate, the defendants fault their attorneys for failing to uncover and use statements of witnesses to impeach the police witnesses at the suppression hearing. They argue that had counsel reviewed the discovery materials, they could have called those witnesses at the hearing to contradict the government's testimony that a man with a child had entered the 1053 Levick Street property.

The defendants' argument revolves around the mistaken assumption that the conflicting statements of the witnesses were not adduced at the suppression hearing and that there is a "reasonable probability" that the result would have been different. They are wrong. First, as brought out by defense counsel, it was apparent that two witnesses did not see what the police believed a third witness saw – a man take a child into the house. Second, the suppression ruling did not rest on what Antoine actually saw.

After the first suppression hearing at which defense counsel complained that statements made by the witnesses James Antoine, Brad Feinstein, and Stacey Hummell

had not been produced, FBI agents interviewed those witnesses. The statements of those witnesses were provided to defense counsel who then requested reconsideration. Accordingly, we conducted a second suppression hearing at which counsel were able to use the statements.

There has never been a question that Hummell and Feinstein had not seen anyone take a small child into the property. They did see a man take a child out of one of the vehicles. Feinstein told the police that the man fled with the child down the driveway towards Summerdale Avenue. At the suppression hearing, Antoine, contrary to what Sergeant Barclay had testified, stated that he did not see and did not tell the police he saw a man take a child into the house.

The defendants make much of the fact that no one at the scene had "definitely seen a man take a child into the house." What was important was not what Antoine told the police, but what they understood him to have said.

Critical to the finding of exigent circumstances was not what Antoine had said, but rather what the police believed he had said. As both the suppression court and the appellate court concluded, Antoine's statement was made in the confusion of the immediate aftermath of a shoot-out and he spoke in a heavy accent while pointing to the property.

Hummell and Feinstein may have seen things differently than Antoine. Each witness may have observed different parts of the unfolding events before them. That they did not report having seen the same things is not surprising. This testimony would not have directly contradicted the police witnesses.

In its opinion affirming the suppression orders, the Third Circuit discussed the

6

seemingly conflicting testimony.  Indeed, the appellate court found that the discrepancies were not fatal to the conclusion that the police believed that a male could have entered 1053 Levick Street with a child.  It said:

> The District Court found that Antoine and Officers Barclay and Erbele were all credible witnesses, and explained that the discrepancies between the officers' testimony and Antoine's testimony were due the Officers' difficulty in understanding Antoine's Haitian accent.  This was not clear error.  Both Erbele and Casee testified that they found it difficult to understand Antoine, and a fair reading of the testimony supports the genuineness of those assertions.  Adding to the possible confusion, Antoine pointed at 1053 Levick while speaking with Barclay and Erbele.
>
> To be sure, there was some confusion between the officers about what Antoine said, but this is unsurprising considering the interviews were conducted at the scene of a shoot-out.  Barclay's testimony is of debatable relevance given that Erbele spoke with Antoine after Barclay and it was Mangini and Erbele who together made the decision to enter the house, apparently based primarily on the information provided by Erbele.  Still, Erbele had the following information: (1) there was a shoot-out; (2) a witness had said that soon after the shooting concluded someone might have entered 1053 Levick, a house adjacent to the scene of the shoot-out; (3) that person may have taken a child from the bullet-ridden Expedition, or may have been involved in the shoot-out, or both; (4) a witness told Erbele that more than one person had exited the Expedition, which had both its front doors open; and (5) there was water running in the house, the lights were on, and no one answered when the police knocked and announced their presence.  These facts made the warrantless search reasonable.

*United States v. Thompson*, 357 Fed. App'x 406, 411 (3d Cir. 2009)

During the suppression hearing, defense counsel thoroughly cross-examined the police officers about what the witnesses had told them they had seen.  Counsel adeptly exposed the various discrepancies among the testimonies of the three witnesses to the parts of the shoot-out and its aftermath.  Counsel ably established that neither Hummell nor Feinstein had seen a male with a child run inside the residence.  Thus, the determination of exigent circumstances rested upon what the police believed Antoine had

told them.

The defense attorneys' cross-examination of the witnesses suggests strongly that defense counsel had the statements.  The attorneys exposed what the defendants now argue they should have developed — that Hummell and Feinstein or other witnesses did not see a small child taken into the house.  Consequently, even if defense counsel did not have the statements prior to the suppression hearings, they were still effective in exposing the discrepancies.

The defendants were not prejudiced by any failure of defense counsel to develop and emphasize the conflicting accounts of what the witnesses had seen.  The determination of the suppression motion was made on the basis of an assessment of the credibility of the witnesses presented.  That some witnesses had not seen what the police believed Antoine had told them he had seen did not undermine the credibility of the police officers.  Given the circumstances, the police were not required to choose among the witnesses whom they should believe.  As long as one of them was believed to have seen a child in the house was sufficient to bolster the conclusion that there were exigent circumstances.

After reviewing the statements made to the police by the other two witnesses, Hummell and Feinstein, we conclude that there is no reasonable probability that the findings of fact and the suppression decision would have been any different.  Indeed, it would not have been necessary to judge the credibility of Hummell and Feinstein because we accepted their rendition of what they had seen as accurate.  Their testimony would not have altered our assessment of the credibility of the officers, particularly with respect to what they believed Antoine had reported.

The defendants can not demonstrate a "reasonable probability" that the motions to suppress would have been granted.  On the contrary, the outcome would have been no different.  Therefore, the defendants have not established the prejudice component of their ineffectiveness of counsel claim.

### Bolger's Sentencing Claim

Bolger argues that his counsel at sentencing failed to use FBI 302s to impeach an FBI agent's testimony regarding ownership of the firearms found in the property.   At sentencing, a two-level enhancement was applied pursuant to U.S.S.G. § 2D1.1(b)(1).  To support the enhancement, the government presented the testimony of FBI Agent Lynn Monahan to connect two of the weapons found at the scene to Romel Bolger.  She testified that Edward Tull informed her that he gave the weapons to Bolger after he had purchased them from David Frost.

Bolger claims his attorney had FBI 302s which recited that Tull had informed them that Bolger was present when he sold the guns to someone else.  Yet, counsel failed to use them.

Bolger's argument misses the point.  It did not matter whether Bolger had directly purchased the guns or that someone else did.  The issue was whether he was connected to the weapons that were found at the scene.  How he came into possession of them was not the point.

Bolger's counsel actually did what he argues he did not.  He brought out conflicting evidence that cast doubt on whether Bolger had ever obtained the weapons as the agent claimed.  Nevertheless, there was enough evidence to find a sufficient nexus between the guns found in the house and Bolger to support the enhancement.

9

In any event, Bolger suffered no prejudice.  Had the enhancement not applied, he sentence would not have changed.  At sentencing, I specifically stated that the sentence would have been the same had the enhancement applied or not.  Hence, there is no possibility, let alone a reasonable probability, that the sentence would have been lower.

### Evidentiary Hearing

The court must hold an evidentiary hearing on a motion under 28 U.S.C. § 2255 "unless the motion and files and records of the case show conclusively that the movant is not entitled to relief."  *United States v. Lilly*, 536 F.3d 190, 195 (3d Cir. 2008) (citations omitted).  Because the motion, files, and records in this case show that the defendants are not entitled to relief under 28 U.S.C. § 2255, an evidentiary hearing is not necessary.

### Certificate of Appealability

A certificate of appealability is granted only if the petitioner makes: "(1) a credible showing that the district court's procedural ruling was incorrect; and (2) a substantial showing that the underlying habeas petition [or motion] alleges a deprivation of constitutional rights."  *Morris v. Horn*, 187 F.3d 333, 340 (3d Cir. 1999); *see also* 28 U.S.C. § 2253(c)(2).  The defendants have not made such a showing. Thus, a certificate of appealability will not issue.